UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.H.,<br><br>            Plaintiff,<br><br>    v.<br><br>BRENTWOOD UNION SCHOOL DISTRICT, et al.,<br><br>            Defendants. | Case No. 21-cv-00196-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Docket Nos. 11, 14 |

## I.     INTRODUCTION

Plaintiff C.H. brings this action against Brentwood Union School District ("the District") and Valerie Harrison (collectively "Defendants"). C.H. asserts eight claims against Defendants pursuant to 42 U.S.C. § 1983 and California tort law, based on an alleged physical assault that he endured in a school classroom in September 2019. Pending before the Court are the Defendants' motions to dismiss six of these claims. The Court held a hearing on the motions to dismiss on June 22, 2021. For the reasons given below, the Court **GRANTS** the District's motion to dismiss in full with leave to amend, and **GRANTS IN PART** and **DENIES IN PART** Ms. Harrison's motion to dismiss with leave to amend.

## II.     BACKGROUND

C.H.'s complaint alleges that on or around September 16, 2019, C.H. was in his seventh-grade science class at Bristow Middle School, standing and talking with some classmates. Docket No. 1 ("Compl.") ¶ 5. C.H. was the only African American student in the group. *Id.* Brentwood Union School District, the district where Bristow Middle School is located, has mainly white

students and a small percentage of African American students. *Id.* ¶ 13.

At some point during class, Valerie Harrison, a substitute teacher for that day and who is Caucasian, "ordered Plaintiff C.H. to take off his hoodie sweatshirt." *Id.* ¶¶ 4, 5. C.H. told Ms. Harrison that he was "getting over a cold" and that the "hoodie was helping him stay warm and get better." *Id.* ¶ 5. Ms. Harrison then "walked over to where C.H. was standing and, without warning, roughly grabbed C.H. by his hood and dragged him backward to his seat in front of all his classmates." *Id.* ¶ 6. While being dragged by his hood, C.H. told Ms. Harrison that "he was having trouble breathing because the hood and hoodie zipper were choking him." *Id.* Ms. Harrison "ignored Plaintiff's pleas and did not stop dragging and choking [him], but instead continued to drag him to his seat and physically forced him down onto his seat." *Id.* C.H.'s neck was scratched by the hoodie zipper while Ms. Harrison was pulling the hoodie. *Id.* ¶ 8. Ms. Harrison had not asked C.H. to take his seat at any time before dragging and choking him. *Id.* ¶ 7. Fellow students informed Bristow Middle School administrators about the incident after class. *Id.* ¶ 10. However, the administrators did not notify C.H.'s parents; C.H. did not either because he was "so embarrassed and distressed." *Id.* ¶¶ 10, 11. His parents only learned about it a few days later from C.H.'s twin brother. *Id.* ¶ 11.

On or around September 20, 2019, someone reported the incident to the Brentwood Police Department. *Id.* ¶ 12. Ms. Harrison told the investigating officer that "she does not remember pulling a hood, but it sounds like something she would do." *Id.* Other students in the classroom corroborated that Ms. Harrison "had pulled [C.H.] by his hood and forced him into his seat." *Id.* As a result of Ms. Harrison's conduct, C.H. has "suffer[ed] anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame." *Id.* ¶ 13.

C.H.'s complaint asserts claims against Ms. Harrison for violations of 42 U.S.C. § 1983 regarding the use of excessive force (Claim 1) and denial of equal protection (Claim 2); claims against the District for the same violations under the *Monell* theory of municipal liability (Claims 3 and 4), and for negligent hiring, retention and supervision (Claim 8); and three claims against the Defendants collectively under *respondeat superior* for battery (Claim 5), intentional infliction of emotional distress ("IIED") (Claim 6), and negligence (Claim 7).

The District moved to dismiss Claims 3, 4, 6 and 8 on April 19, 2021. *See* Docket No. 11. Ms. Harrison moved to dismiss Claims 2, 6 and 7 on May 18, 2021. *See* Docket No. 14. C.H. filed briefs in opposition on May 3 and June 1, 2021, to the District and Ms. Harrison respectively. *See* Docket Nos. 12, 16. The District and Ms. Harrison filed reply briefs on May 10 and June 8, 2021, respectively. *See* Docket Nos. 13, 17. The Court held a hearing on the motions to dismiss on June 22, 2021.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

### IV.   DISCUSSION

A.   Claim 2: Equal Protection

Section 1983 creates a civil cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another person of any of

3

their "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, a complaint must allege a violation of a constitutional or other federal right and that the violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, the "first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. at 271. To state a claim for denial of equal protection pursuant to the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the defendant acted intentionally because of the plaintiff's membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). Sufficiently alleging discriminatory intent requires facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Differential treatment among similarly situated individuals may provide grounds for an inference of discriminatory intent. *See, e.g.*, *Whiting v. Dep't of Cal. Highway Patrol*, 2020 WL 5753231, at *7 (C.D. Cal. Sept. 1, 2020); *Lim v. City & Cnty. of San Francisco*, 2010 WL 1838834, at *5 (N.D. Cal. May 4, 2010). For example, the *Whiting* court found that a plaintiff adequately pleaded an equal protection claim where the police-officer defendant stopped the plaintiff, who was Black, in his car several times while ignoring a nearby white driver with a broken car. *See* 2020 WL 5753231 at *7. In contrast, in *Lim*, a Filipino American woman inadequately pleaded an equal protection claim on account of her race and gender against the city of San Francisco, where she was denied access to public financing to run for a city board of supervisors seat, while most other candidates received public financing. *See* 2010 WL 1838834 at *5. Since "nothing in [her] complaint indicate[d] that the other candidates were similarly situated to her," such as that other candidates had outstanding campaign-finance-related fines owed to the city at the time, as she had, and she did not even allege whether those candidates "were male or non-Filipino[]," the court held that it could not infer any discriminatory intent. *Id.*

4

C.H. alleges that Ms. Harrison "acted with an intent and purpose to discriminate against [him] based on his race" and "singled out [him] on the basis of race." Compl. ¶¶ 22. However, these allegations are inadequate because they lack supporting facts sufficient to state a claim of intentional race discrimination. The complaint merely states that C.H. was "standing" among a group of students, was "ordered . . . to take off his hoodie sweatshirt," chose to keep it on because "he was getting over a cold," and was then "grabbed . . . by his hood and dragged backward to his seat." *See id.* ¶¶ 5–6. In his reply, C.H. re-emphasizes that him being "the only African American student in the group" and "the only student grabbed and dragged to his seat by [Ms.] Harrison" should permit an inference of discriminatory intent. *See* Docket No. 16 at 10–11 (emphasis original). However, these facts are still inadequate to state a plausible claim, as they do not suggest that C.H. received differential treatment vis-à-vis similarly situated students. In contrast, if, for example, one or more non-Black students similarly refused Ms. Harrison's request to remove their jackets and were not physically harmed as a result, such facts could conceivably provide grounds for the Court to infer discriminatory intent, just as differential treatment to motorists in the same vicinity allowed an inference of discriminatory intent in *Whiting*. *See* 2020 WL 5753231 at *7. While there may be other ways of stating facts that could give rise to an inference of racially motivated discrimination (*e.g.*, use of racial epithets), no such facts are alleged here. Thus, the complaint lacks allegations which would provide a plausible basis for inferring Ms. Harrison's discriminatory intent.

The Court therefore **GRANTS** Ms. Harrison's motion to dismiss C.H.'s second claim with leave to amend.

B.      Claims 3 and 4: Municipal Liability

Municipal liability requires that "an action pursuant to official municipal policy of some nature caused a constitutional tort." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In other words, "a municipality cannot be held liable solely because it employs a tortfeasor." *Id.* Thus, "only when execution of a government's policy or custom . . . inflicts the injury" will the municipal entity be held liable under Section 1983. *Id.* at 694. The Ninth Circuit has delineated four specific scenarios in which municipal actions may give rise to liability under *Monell*: (1) an

5

1  official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or
2  (4) a decision or act by a final policymaker. *Horton v. City of Santa Maria*, 915 F.3d 592, 602–3
3  (9th Cir. 2019).

4  To state a claim based on a pervasive practice or custom, the plaintiff must identify a
5  practice that is so "longstanding" that it constitutes the "standard operating procedure of the local
6  government entity." *Jett v. Dallas*, 491 U.S. 701, 737 (1989). Likewise, to state a claim based on
7  a failure to train, plaintiff must "ordinarily" identify "[a] pattern of similar constitutional violations
8  by untrained employees," or alternatively, "the unconstitutional consequences of failing to train
9  [are] so patently obvious that a [municipality] could be liable . . . without proof of a pre-existing
10 pattern of violations." *See Connick v. Thompson*, 563 U.S. 51, 62, 64 (2011). After establishing
11 such a pervasive practice or failure to train, the plaintiff must plead that (1) their constitutional or
12 federal rights were violated; (2) the municipality's practice or failure to train amounted to
13 deliberate indifference to those rights; and (3) the practice or failure to train was the "moving
14 force" behind the violation. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001);
15 *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

16 Here, C.H. brings two claims of municipal liability against the District. He first asserts
17 that the District maintained practices that resulted in the use of excessive force against him. Even
18 if C.H. had sufficiently alleged such a constitutional violation, however, he has not sufficiently
19 alleged *Monell* liability. Specifically, C.H. has not sufficiently alleged that the District's
20 purported failure to discipline teachers for using force against children constitutes a "pervasive
21 practice," nor that its purported failure to train teachers not to use physical force against children
22 constitutes a "failure to train." *See* Compl. ¶¶ 25–29; *see also* Docket No. 12 at 7–8 (clarifying the
23 claims due to ambiguity in the complaint). The complaint merely states that "[o]n information and
24 belief, [the District] had a practice of not training teachers, including substitute teachers, to refrain
25 from physically disciplining children," with the only supporting fact being that the District has
26 received "multiple prior complaints against it involving use of excessive force against children."
27 Compl. ¶ 27. This statement reveals no details as to, for instance, what misconduct was alleged,
28 when the alleged misconduct occurred, how many complaints there were, or how the District

responded to the complaints. As it stands, the bare allegation that the District received complaints does not establish that it has failed to train teachers when it should have, let alone that any such failure is "longstanding." *See Jett*, 491 U.S. at 737. C.H. provides no evidence for his allegation that the District fails to discipline teachers who have committed misconduct. Compl. ¶ 28. He only conclusorily alleges that, "[o]n information and belief, teachers were not adequately disciplined for using force against children." *See id.* These allegations are insufficient to meet the pleading requirements of *Twombly* and *Iqbal*, which apply to *Monell* claims.

The Court therefore **GRANTS** the District's motion to dismiss C.H.'s third claim with leave to amend.

Additionally, C.H. asserts that the District maintains practices that resulted in a denial of equal protection. C.H.'s allegations with respect to this claim, however, are similarly inadequate. First, as explained above, he has not sufficiently alleged that he was denied equal protection. Second, assuming *arguendo* that he had successfully pled an equal protection violation against Ms. Harrison, his claim that the District has a pervasive practice of failing to discipline teachers for discriminating against students of color, and fails to train teachers not to discriminate against students of color, lacks an evidentiary basis. *See id.* ¶¶ 30–33. He merely conclusorily alleges that, "[o]n information and belief, [the District] had a practice of not training teachers . . . to refrain from physically disciplining children based on their race," and "[o]n information and belief, teachers were not adequately disciplined for discriminating against students of color." *Id.* ¶ 32. C.H. must provide further details about this "information" to state a plausible claim.

The Court therefore **GRANTS** the District's motion to dismiss C.H.'s fourth claim with leave to amend.

C. Claim 6: IIED

Under California law, the elements of an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress." *Christen v. Superior Ct. of Los Angeles Cnty.*, 54 Cal. 3d 868, 903 (1991). C.H. brings an IIED claim against Ms. Harrison and a

7

vicarious liability claim against the District under California Government Code § 815.2. Section 815.2 provides for vicarious liability against a public entity on behalf of tortious conduct by an employee, acting within the scope of his or her employment. *See* Cal. Gov. Code § 815.2. Defendants argue that C.H. fails to plead the elements of extreme and outrageous conduct or severe emotional distress.

        1.     <u>Extreme and Outrageous Conduct</u>

To state an IIED claim, the conduct at issue must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christen*, 54 Cal. 3d at 903 (citing *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but only to conduct so extreme as "to be regarded as atrocious." *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970). Cases with student plaintiffs have found that prolonged torment, frequently involving violence by police officers, constitutes extreme and outrageous conduct at the pleading stage. In *C.B. v. Sonora School District*, for example, the court held that police officers taking a student into custody rather than contacting his family per his IEP, injuring his wrists in handcuffs, driving him in a police car for half an hour, and having no official reason for the action was extreme and outrageous conduct for the purposes of a motion to dismiss. *See* 691 F. Supp. 2d 1170, 1174, 1188–89 (E.D. Cal. 2010). Similarly, in *Banks v. Modesto City Schools District*, the court found that teachers taunting a disabled student about a traumatic incident, in which a police officer pepper-sprayed her face; threatening to take her to the police again; and purposely bringing her to the police despite her appeals not to sufficed to plead extreme and outrageous conduct. *See* 2005 WL 2233213, at *12 (E.D. Cal. Sept. 9, 2005). In contrast, in *K.T. v. Pittsburg Unified School District*, the court held that while "[g]rabbing, slapping, and kicking a child with special needs is deplorable," the conduct was insufficient to state an IIED claim, as the abuse was "not so depraved" as to "shock the conscience." *See* 219 F. Supp. 3d 970, 980 (N.D. Cal. 2016).

Ms. Harrison's conduct here does not rise to the level of extreme and outrageous. As in *K.T.*, where grabbing, slapping, and kicking a child was not found to be sufficiently harmful to

8

support an IED claim, Ms. Harrison "grabbed C.H. by his hood and dragged him backward to his seat," Compl. ¶ 6—conduct that, based on the allegations in the complaint, was undoubtedly injurious and unwarranted but "not so depraved" that it "shock[s] the conscience." *See K.T.*, 219 F. Supp. 3d at 980. In addition, unlike in *C.B.*, where the police detained the student for half an hour, and *Banks* where the teachers taunted a student over a period of several weeks, Ms. Harrison's conduct occurred in a brief single incident. *See* Compl. ¶ 6.

The cases that C.H. cites in his favor, where courts found extreme and outrageous behavior, are inapposite to the facts at hand. *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 2010 WL 2179964, at *1, *5 (E.D. Cal. May 27, 2010) (police dragged plaintiff to ground and restrained him face-down); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1613 (Cal. Ct. App. 2012) (defendant rushed toward plaintiff, made obscene comments, threatened to kill him and his dog); *Acinelli v. Torres*, 2019 WL 6825767, at *8 (C.D. Cal. April 22, 2019) (doctor sexually assaulted plaintiff during examination in prison, continued to make inappropriate advances); *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 953 (N.D. Cal. 2011) (flight attendant yelled at plaintiff, punched her arm, saliva hit her face). All these cases involve far more aggressive physical violence or harassing conduct than that alleged here. As such, C.H. has not sufficiently alleged that Ms. Harrison's actions constituted extreme and outrageous behavior.

2. <u>Severe Emotional Distress</u>

The Court also concludes that C.H. has failed to plead that he suffered severe emotional distress, another element of an IIED claim. Severe emotional distress must be "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993)). In addition, district courts applying California law have held that conclusory allegations without details about the distress are insufficient to state a claim. For instance, in *Galindo v. City of San Mateo*, this Court held that a complaint that only stated that the plaintiff experienced "severe emotional distress, humiliation, indignity, embarrassment, anger, frustration, annoyance, anxiety . . . and loss of enjoyment of life" was too conclusory to allege severe emotional distress. *See* 2016 WL 7116927, at *9 (N.D. Cal.

9

Dec. 7, 2016) (Chen, J.). Similarly, in *Nelson v. County of Sacramento*, the plaintiff alleged experiences of "pain, grief, shame, humiliation . . . and worry," which the court found as "lack[ing] specific facts to show their nature and extent." *See* 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013). In contrast, in *Robles v. Agreserves*, the court held that the plaintiff sufficiently pleaded severe emotional distress where he alleged that he experienced symptoms of anxiety and depression such that he had "nightmares, cried, felt stressed, pushed his kids away, isolated himself, experienced panic attacks, had memory loss, could not relax quickly, and fought with his wife." *See* 158 F. Supp. 3d 952, 973 (E.D. Cal. 2016).

The conclusory allegations here more closely resemble those in *Galindo* and *Nelson* than those in *Robles*. In the complaint, C.H. alleges only that he has suffered "anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame," without providing particular details regarding, for instance, how his distress has manifested itself in his day-to-day activities. *See* Compl. ¶ 13. To plausibly plead severe emotional distress, a plaintiff must provide a greater degree of specificity.

For these reasons, the Court **GRANTS** Defendants' motion to dismiss claim 6 with leave to amend.

D.  Claim 7: Negligence

Public employees in California can be held liable for common law torts, such as negligence. *See* Cal. Gov. Code § 820. To assert a common law negligence claim in California, a plaintiff must plead four elements: duty, breach, causation, and damages. *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083–84 (2017).

As a general rule, intentional conduct cannot form the basis of a negligence claim. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). However, if the facts alleged in a complaint may reasonably be interpreted as giving rise to a negligence claim, a court may construe those facts as providing the basis of such a claim. *See id.* For example, in *Miller*, the employee plaintiffs brought intentional and negligent infliction of emotional distress claims against their former employer. *Id.* at 729–30. The plaintiffs alleged that they had been laid off just two months after negotiating a new contract with their employer, thereby depriving them of

newly established benefits, such as access to training opportunities. *Id.* The Ninth Circuit held that evidence that the employer "intentionally retaliated" against the plaintiffs in laying them off "would preclude an assertion that this same intentional action constituted negligence." *Id.* at 738. However, since the defendant's "act of negotiating" the contract and "then laying them off prior to their enjoyment of benefits implied under the contract" may have alternatively been due to "carelessness," the court held that the plaintiffs had sufficiently stated a negligence claim. *Id.*

Here, the Court finds that C.H. has similarly pled facts sufficient to state a negligence claim. The complaint alleges that Ms. Harrison "ordered [C.H.] to take off his hoodie sweatshirt," and when C.H. did not, she "walked over" to him and "roughly grabbed [him] by his hood and dragged him backward to his seat." *See* Compl. ¶¶ 5, 6. These allegations may plausibly be interpreted as indicating that Ms. Harrison was instructing C.H. to sit down, and when her verbal directive failed to bring about its desired effect, she carelessly but intentionally applied excessive force to make him sit. Indeed, in its opposition brief, the District asserts that Ms. Harrison's conduct was, at worst, "negligent," indicating that the general contours of negligent conduct can be inferred from the complaint. *See* Docket No. 13 at 8. Consequently, Defendants have been given "fair notice of what the claim is and the grounds upon which it rests," as required under Federal Rule of Civil Procedure 8(a)(2). *See Twombly*, 550 U.S. at 555.

The Court accordingly **DENIES** Ms. Harrison's motion to dismiss claim 7.

E.     <u>Claim 8: Negligent Hiring, Retention and Supervision</u>

California Government Code § 815.2 establishes that public school districts can be held vicariously liable for their employees' torts. *See* Cal. Gov. Code § 815.2(a). California common law additionally recognizes that school employees have a "duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 870 (2012). Accordingly, a school district may be liable under § 815.2 for the negligence of its school administrators or supervisors in hiring, retaining, and supervising a school employee who harasses and abuses a student. *Id.* at 879.

To allege negligent hiring, retention and supervision of a school employee, a plaintiff must demonstrate that the district knew or should have known through its hiring, retention, or

11

supervision processes that "the employee created a particular risk or hazard" and that "that particular harm materialize[d]." *See S.G. v. San Francisco Unif. Sch. Dist.*, 2018 WL 1876875, at *10 (N.D. Cal. Apr. 19, 2018) (Chen, J.). For example, in *S.G.*, this Court found that the student plaintiff adequately alleged that the district negligently supervised her teacher, since district employees "failed to intervene" after being informed of and observing the teacher's repeated sexual abuse toward her in the classroom and outside on campus. *See id.* at *8. Similarly, in *Garcia v. Clovis Unified School District*, the court found that the student plaintiff plausibly alleged a negligent supervision claim against the district, where she informed district employees at a board meeting of her teacher's sexually abusive behavior, the district took no action, and the teacher continued to leer and stare at her. *See* 627 F. Supp. 2d 1187, 1193, 1207 (E.D. Cal. 2009). In contrast, in *Garcia*, the court separately found that the plaintiff inadequately alleged that the district negligently hired and retained that teacher, as the complaint did not allege one way or another whether the district "behaved reasonably in its attempts to discover the fitness of its employees." *See id.* at 1208–9.

Here, the Court rejects the District's argument that C.H. must identify a specific negligent supervisory or administrative employee. *See* Docket No. 11 at 18; Docket No. 13 at 9. Given that some District employee(s) were responsible for hiring, retaining, and supervising Ms. Harrison, and that discovery would reveal their identities, it would be excessively formalistic to require the plaintiff to identify a specific employee at this stage of the litigation. *See Garcia*, 627 F. Supp. 2d at 1207 (finding plausible claim of negligent supervision of school personnel without identifying specific negligent district employees). This is a matter within the District's knowledge.

Nonetheless, C.H. fails to state a claim of negligent hiring, retention and supervision because the complaint does not adequately allege that the District knew or should have known that Ms. Harrison was unfit to supervise students. *See* Compl. ¶¶ 47–52. The complaint alleges only that, "[o]n information and belief, employees at [the District] knew or should have known that [Ms. Harrison] was not qualified to and could not be trusted to supervise middle school children." *See id.* ¶ 51. C.H. has not alleged that Ms. Harrison ever acted inappropriately in any way prior to this incident or that there was anything in her employment record that should have raised

concerns. *See id.* ¶ 47–52. More particularized allegations than those provided here—*e.g.*, that the District previously witnessed Ms. Harrison engaging in misconduct with students, was notified through official means of such past misconduct, or had unreasonable practices to discover its employees' fitness generally, as in *S.G.* and *Garcia*—are required to state this type of claim.

The Court therefore **GRANTS** the District's motion to dismiss claim 8 with leave to amend.

## V. CONCLUSION

For the reasons given above, the Court **GRANTS** the District's motion to dismiss claims 3, 4, 6 and 8 but gives C.H. leave to amend his complaint. The Court also **GRANTS** Ms. Harrison's motion to dismiss claims 2 and 6 with leave to amend. The Court **DENIES** Ms. Harrison's motion to dismiss claim 7. C.H. may file an amended complaint within thirty (30) days from the date of this order.

This order disposes of Docket Nos. 11 and 14.

**IT IS SO ORDERED**.

Dated: July 30, 2021

_____
EDWARD M. CHEN
United States District Judge

13